1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSEPH DAWSON,

11              Plaintiff,              No. CIV S-03-0967 MCE GGH P
          vs.
12
     ARNOLD SCHWARZENEGGER,
13   Governor of California, et al.,

14              Defendants.
     _____/
15
     STEVEN GOMEZ,
16
                Plaintiff,             No. CIV S-03-0968 MCE GGH P
17
          vs.
18
     ARNOLD SCHWARZENEGGER,
19   Governor of California, et al.,

20              Defendants.
     _____/
21
     EDWARD HARO,
22
                Plaintiff,             No. CIV S-03-0973 MCE GGH P
23        vs.
     ARNOLD SCHWARZENEGGER,
24   Governor of California, et al.,

25              Defendants.
     _____/
26

                                      1

1  ZACHARIAH GUZMAN,

2            Plaintiff,                    No. CIV S-03-0977 MCE GGH P

3       vs.

4  ARNOLD SCHWARZENEGGER,
   Governor of California, et al.,          FINDINGS & RECOMMENDATIONS
5            Defendants.
   _____/

6

7  I. Introduction

8            Each plaintiff in the above-captioned cases began these proceedings as a state

9  prisoner proceeding pro se, seeking relief pursuant to 42 U.S.C. § 1983.[1]  Plaintiffs are Native

10 American Indians and each was incarcerated at California State Prison - Solano; each names the

11 same defendants and each alleges, in identical allegations within their respective amended

12 complaints that, under the California Department of Corrections and Rehabilitation (CDC) hair-

13 grooming policy within Title 15 of the California Code of Regulations,[2] they are forbidden to

14 wear their hair long.

15           Plaintiffs have long hair which violated the regulation.  Plaintiffs allege that

16 wearing their hair long is a sincerely held traditional religious belief; thus, the prison hair-

17 ────────────────

18      [1]  By order filed on May 7, 2004, Curran v. Schwarzenegger, et al., No. CIV S- 03-0964
   MCE GGH P, in the interest of judicial economy and efficiency, was designated as the lead case
19 among the cases denominated above.  On July 21, 2005, plaintiff Curran paroled, rendering his
   claims moot.  On October 27, 2005, the court issued Findings and Recommendations adopted by
20 the District Court on December 14, 2005 redesignating Dawson v. v. Schwarzenegger, et al., No.
   CIV S- 03-0967 MCE GGH P as the lead case.  Plaintiff Dawson was given 10 days to file
21 supplemental motions to the pending defense motion for summary judgment.  Plaintiff did not
   file any supplemental briefing.
22
        [2]  Under CAL. CODE REGS. tit.xv, § 3062(e):
23
             A male inmate's hair shall not be longer than three inches and shall
24           not extend over the eyebrows or below the top of the shirt collar
             while standing upright. Hair shall be cut around the ears, and
25           sideburns shall be neatly trimmed, and shall not extend below the
             mid-point of the ear. The width of the sideburns shall not exceed
26           one and one-half inches and shall not include flared ends.

2

1  grooming policy violated their First Amendment right to the free exercise of their religion and

2  should be modified in light of the Religious Land Use and Institutional Persons Act of 2000

3  (RLUIPA), codified at 42 U.S.C. § 2000cc.[3]  All plaintiffs seek permanent injunctive relief only.

4          On March 24, 2004, defendants filed a motion for summary judgment.  On April

5  8, 2004, plaintiff filed his opposition.  Defendants replied on April 19, 2004.  The court did not

6  consider plaintiff's reply to defendant's reply as this surreply was striken by order of this court on

7  December 17, 2004.

8          On January 27, 2006, CDC announced an emergency change to its rules

9  permitting inmates to wear their hair in any manner provided that it does "not extend over the

10  eyebrows, cover the inmate's face or pose a health and safety risk." Amended CAL. CODE REGS.

11  tit.xv, § 3062(e).  Defendant's notified the court of this change through motion on January 27,

12  2006.  This court issued an order dated February 8, 2006, seeking a response from plaintiff as to

13  whether he believed the new regulation made his complaint moot.  On February 17, 2006,

14  plaintiff complied.  Defendants responded to plaintiff's reply to the court on February 28, 2006.

15  \\\\\

16  _____

17      [3] RLUIPA sets forth in pertinent part:

18      (a) General rule
    No government shall impose a substantial burden on the religious
    exercise of a person residing in or confined to an institution, ...

19      even if the burden results from a rule of general applicability,
    unless the government demonstrates that imposition of the burden

20      on that person--
    (1) is in furtherance of a compelling governmental interest; and

21      (2) is the least restrictive means of furthering that compelling
    governmental interest.

22      (b) Scope of application
    This section applies in any case in which--

23      (1) the substantial burden is imposed in a program or activity that
    receives Federal financial assistance; or

24      (2) the substantial burden affects, or removal of that substantial
    burden would affect, commerce with foreign nations, among the

25      several States, or with Indian tribes.

26  42 U.S.C. § 2000cc-1 (West Supp.2003)

1    On July 27, 2006, the emergency regulations became final.  In pertinent part, the

2  final regulation is unchanged from the emergency regulation and states that "an inmate's hair

3  may be any length but shall not extend over the eyebrows, cover the inmate's face or pose a

4  health and safety risk.  If hair is long, it shall be worn in a neat, plain style, which does not draw

5  undue attention to the inmate."  Amended CAL. CODE REGS. tit.xv, § 3062(e)

6    In their response to the court's order regarding mootness, plaintiff argues that the

7  regulation does not render his claim moot because the emergency regulation is a proposed

8  regulation subject to public hearing and comment before final adoption, and that the regulation is

9  ambiguous, leaving open the possibility of continued abuse.  In addition, plaintiff contends that

10  restoration of privileges and credits lost under the previous regulation is required.  Finally,

11  plaintiff argues that he is entitled to nominal damages and reimbursement for the costs of

12  pursuing this action.

13  II.  Mootness

14    *Change in Regulation*

15    Mootness requires that the interest that existed at the initiation of the action

16  continue through to the end of the action.  United States Parole Comm'n v. Geraghty, 445 U.S.

17  388, 397, 100 S. Ct. 1202, 1209, 63 L.Ed.2d 479 (1980).  Absent an actual, live controversy, the

18  court risks delivering advisory opinions addressing supposed wrongs, in violation of the

19  Constitution.  U.S. Const. Art. III; SEC v. Medical Comm. For Human Rights, 404 U.S. 403,

20  407, 92 S. Ct. 577, 579, 30 L.Ed.2d 560 (1972); Muskrat v. United States, 219 U.S. 346, 362, 31

21  S. Ct. 250, 255, 55 L.Ed. 246 (1911).  Without the ability to issue a ruling that actually affects

22  the litigants rights, the court has no jurisdiction.  Allard v. DeLorean, 884 F.2d 464, 466 (9th Cir.

23  1989).

24    Exceptions to the mootness doctrine exist.  These exceptions include

25  controversies capable of repetition, yet evading review, as well as situations where the defendant

26  voluntary ceases their illegal conduct.  See Barilla v. Ervin, 886 F.2d 1514, 1519 (9th Cir. 1989);

4

1  Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 854 (9th Cir. 1985).  In order for these

2  exceptions to apply, several conditions must be met.

3          For cases capable of repetition, yet evading review, two criteria must be

4  established.  First, there must be a "reasonable expectation" that the same party suffering an

5  apparent injury will be injured again.  See Weinstein v. Bradford, 423 U.S. 147, 149, 96 S. Ct.

6  347, 348, 46 L.Ed.2d 350 (1975); Barilla, 886 F.2d at 1519.  Second, the type of injury suffered

7  by the party must inherently be the type that will always become moot prior to completion of

8  federal court litigation.  Ackley v. Western Conference of Teamsters, 958 F.2d 1463, 1469 (9th

9  Cir. 1992); see, e.g., Roe v. Wade, 410 U.S. 113, 125, 93 S. Ct. 705, 712, 35 L.Ed.2d 147 (1973)

10  (holding that right to abortion claim capable of repetition yet evading review because litigation

11  typically lasted longer than nine month gestational period).  Defendant's conduct does not meet

12  this exception.

13          However, in response to several court decisions, CDC has voluntarily ceased their

14  complained of behavior by changing their grooming regulation to permit the wearing of long

15  hair.  See Final Statement of Reasons, FSOR Grooming/Programs, June 22, 2006, (hereinafter

16  "Final Statement") at 1.  Generally, mootness does not apply in situations where a defendant

17  voluntary ceases their allegedly improper behavior in response to litigation.  See Native Village

18  of Noatak v. Blatchford, 38 F.3d 1505, 1510 (9th Cir. 1994).  However, when there is no

19  reasonable expectation that the defendant will resume his challenged behavior, mootness may

20  apply.  United States v. W.T. Grant Co., 345 U.S. 629, 632-33, 73 S. Ct. 894, 897-98, 97 L.Ed.

21  1303 (1953); Lindquist, 776 F.2d at 854.  Furthermore, mootness requires that "interim relief or

22  events have completely and irrevocably eradicated the effects of the alleged violation."  Los

23  Angeles County v. Davis, 440 U.S. 625, 631, 99 S. Ct. 1379, 1383, 59 L.Ed.2d 642 (1979)

24  (citations omitted), (quoting W.T. Grant, 345 U.S. at 633, 73 S.Ct. at 897).

25          A statutory change that alters or repeals the challenged action is generally enough

26  to render a controversy moot.  See Burke v. Barnes, 479 U.S. 361, 363, 107 S. Ct. 734, 736, 93

5

L.Ed.2d 732 (1987); United States Dep't of Treasury v. Galioto, 477 U.S. 556, 559-60, 106 S. Ct. 2683, 2685-86, 91 L.Ed.2d 459 (1986).  In addition, corrective action by an agency to its regulations during the pendency of a lawsuit can also render a controversy moot.  Commissioner v. Shapiro, 424 U.S. 614, 622-23 n.7, 96 S. Ct. 1062, 1068 n.7, 47 L.Ed.2d 278 (1976); Save Our Cumberland Mountains, Inc. v. Clark, 725 F.2d 1422, 1432 n.27 (D.C.Cir. 1984) ("There is no question that a case can be mooted by promulgation of new regulations or by amendment or revocation of old regulations"); Tedder v. United States Bd. of Parole, 527 F.2d 593, 595 (9th Cir. 1975) (other aspects of decision superceded by statute) (finding plaintiff's challenge to parole rules moot when change in regulation brought him within protection of rule).  Such is the situation in this case.

Plaintiff's claim that his lawsuit is not moot because the regulation has not been finalized is no longer valid.  Furthermore, there is no indication that defendant's change of the regulation was designed to defeat the pending litigation while continuing the complained of behavior.  This is not a situation where CDC has reserved the right to return to the prior regime upon dismissal of this lawsuit or appears likely to do so.  See Northeastern Florida Chapter of the Assoc. General Contractors of America v. City of Jacksonville, 508 U.S. 656, 661-62, 113 S. Ct. 2297, 124 L.Ed.2d 586 (1993); City of Mesquite v. Aladdin's Castle, 455 U.S. 283, 289 n.11, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982); Princeton v. Schmid, 455 U.S. 100, 102 S. Ct. 867, 70 L.Ed.2d 855 (1982).  In addition, the emergency regulation is substantially different from the previous regulation, and is not simply a subtler attempt to proscribe otherwise lawful behavior that would be permitted under RLUIPA.  See Northeastern Florida Chapter, 508 U.S. at 662; Morrison v. Hall, 261 F.3d 896, 900 (9th Cir. 2001) (holding that prison regulation amended to permit express and first class mail along with periodicals  was not a significant change to render challenge to previous regulation permitting only first and second class mail moot).  Finally, application and interpretation of the amendment are clear.  See New York Transit Auth. v. Beazer, 440 U.S. 568, 580-81, 99 S. Ct. 1355, 1362, 59 L.Ed.2d 587 (1979) (holding challenge

1   not moot when application and interpretation of superceding regulation was uncertain).

2           All indications are that CDC's change is a sincere reevaluation of its policy.  See

3   Final Statement at 1 ("The Department has determined that amending the Department's

4   grooming standards would serve a compelling interest by establishing a less restrictive alternative

5   to the current grooming standards.")  The emergency regulation applies across the board and is

6   not targeted toward a particular religion or culture.  New York Transit Auth, 440 U.S. at 580-81,

7   99 S. Ct. at 1362 (1979).  Plaintiff has provided no evidence to support any contention that prison

8   officials have made this regulatory change in order to manipulate the court.  See Lindquist, 776

9   F.2d 851, 853-54.  It is clear from the face of the regulation that it substantially alters prior CDC

10  grooming policy to permit plaintiff to wear his hair in any length as required by his religion.

11  Furthermore, despite his protests, plaintiff has failed to present any compelling evidence that the

12  regulation is open to interpretation or leaves discretion in its application.

13          The change to the regulation was made in response to lawsuits similar to

14  plaintiff's.  Final Statement at 1.  However, there is no reason to believe that dismissal of this suit

15  will result in immediate reinstatement of the challenged regulations.  California Department of

16  Corrections has utilized its power under the California regulatory scheme to effect changes in its

17  prison system that it believes appropriately balances the rights of inmate with the needs of the

18  state.  The mere ability of CDC to change this regulation at some point in the future, without

19  some express intention to do so, does not provide an exception to the doctrine of mootness.

20  Compare Cornelius v. NAACP Legal Defense and Education Fund, Inc.,473 U.S. 788, 791, n.1,

21  105 S. Ct. 3439, 3443, n.1, 87 L.Ed.2d 567 (1985) (holding that Office of Personnel

22  Management's change in regulation as a result of unfavorable lower court ruling that expressly

23  reserved the right to reinstate the regulation upon a favorable ruling by a higher court did not

24  render the case moot).

25          Plaintiff filed suit alleging a violation of his statutory rights as a result of CDC's

26  hair grooming policy.  Plaintiff requested injunctive relief to stop enforcement of that regulation

7

1  as a remedy.  This policy has now been changed and plaintiff can now wear his hair "any length."

2  CAL. CODE REGS. tit.xv, § 3062(e).  This court no longer has available to it any remedy that can

3  address plaintiff's complaints.  Neighbors of Cuddy Mtn. v. Alexander, 303 F.3d 1059, 1065 (9th

4  Cir. 2002) ("[A] case is moot only where no effective relief for the alleged violation can be

5  given.")  It is clear that the change in regulation has eradicated the effects of the previously

6  alleged violation of RLUIPA.  Dismissal is appropriate.

7           _Application of § 1983 to Claim for Restoration of Lost Credits and Privileges_

8           Plaintiff also argues that his claim is not made moot because there remains the

9  issue of restoration of status and credits lost during the prior regulatory period when long hair

10 could lead to disciplinary action.  Specifically, plaintiff alleges that the loss of earned time credit,

11 placement on C-status, and forfeiture of good time credits requires the court to hear his § 1983

12 claim.  Such argument is without merit.

13          In his original filing, plaintiff requested injunctive relief to the hair grooming

14 standard.  (Pl.'s Compl. 5 ("We are requesting that we be exempt from the grooming standards

15 and that a preliminary injunction be ordered pending the outcome of this Civil Action [sic]."))

16 This relief was consistently sought throughout this litigation.  (Pl.'s Opp'n Mot. Summ. J. 3.)

17 Plaintiff did acknowledge that an injunction "should or will" restore his sentence credits lost as a

18 result of his disciplinary infractions stemming from his violation of the grooming policy, but

19 contended that this was a secondary issue.  (Pl.'s Opp'n Mot. Summ. J. 3.)

20          Plaintiff has refashioned his argument in an attempt to retain its validity.  This

21 action was originally brought under § 1983 as a claim for prospective injunctive relief.  See

22 Nelson v. Campbell, 541 U.S. 637, 643, 124 S. Ct. 2117, 2122 (2004) ("[Claims that] merely

23 challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or

24 injunctive relief, fall outside of [habeas corpus] and may be brought pursuant to § 1983 in the

25 \\\\\

26 \\\\\

1    first instance.)[4]  Despite his statement that "[p]laintiff has no such plan or intent to in any way

2    seek some hypothetical collateral attack as of [his lost credits]," plaintiff now seeks to preserve

3    this lawsuit in order to achieve exactly that outcome.  (Pl.'s Opp'n Mot. Summ. J. 3.)  If that is

4    plaintiff's desired result, his § 1983 claim "must yield to the more specific federal habeas statute

5    with its attendant procedural and exhaustion requirements."  Preiser v. Rodriguez, 411 U.S. 475,

6    489 (1973).

7            Plaintiff's § 1983 claim seeking a cessation of the complained of practice has

8    been rendered moot by CDC's change in the grooming regulation.  Any desire by plaintiff to

9    challenge the conditions of confinement or the duration of confinement resulting from previous

10   application of that regulation is not proper under § 1983.  See Heck v. Humphrey, 512 U.S. 477,

11   481 (1994) citing Preiser, 411 U.S. at 489; Mayweathers v. Newland, 258 F.3d 930, 934 (9th Cir.

12   2001).  Plaintiff recognized this procedural fact in his original § 1983 filing and subsequent

13   arguments.  See  (Pl.'s Compl. 5.); (Pl.'s Opp'n Mot. Summ. J. 3 ([H]abeas corpus is **NOT** an

14   appropriate remedy here (emphasis in original)).)  Given that plaintiff's requested relief can only

15   come through a habeas petition, plaintiff's complaint that this § 1983 action remains ongoing in

16   spite of the change in regulation is without merit.

17       *Damages*

18            Finally, plaintiff argues that this action retains life because of the pending issues

19   of nominal damages and reimbursement.  While § 1983 permits a court to award damages to a

20   ───────────────────

21         [4]  The District Court determined that this action is properly heard as a § 1983 action and
     that ruling is the law of the case.  See Order dated September 3, 2004, adopting in full the
22   Findings and Recommendations of August 12, 2004, aff'd by the Ninth Circuit on December 3,
     2004.  The law of the case doctrine provides that "a court is generally precluded from
23   reconsidering an issue that has already been decided by the same court, or a higher court in the
     identical case."  United States v. Cuddy, 147 F.3d 1111, 1114 (9th Cir. 1998), quoting United
24   States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997) (internal quotation and citation omitted).
     A court may have discretion to depart from the law of the case if: 1) the first decision was clearly
25   erroneous;  2) an intervening change in the law has occurred;  3) the evidence on remand is
     substantially different;  4) other changed circumstances exist;  or 5) a manifest injustice would
26   otherwise result.  Alexander, 106 F.3d at 876.  None of these exceptions to the law of the case
     doctrine exist in this case.

                                              9

1  prevailing party, plaintiff made no claim in his original suit for damages.  42 U.S.C. § 1988(b).

2  Nor is the court willing to entertain a motion to amend the complaint at this juncture.  By seeking

3  to acquire an award of $1, plaintiff seeks what could only be termed in reality as "an historical

4  advisory opinion" that the previous regulation violated RLUIPA.  While the costs to plaintiff are

5  negligible in seeking to acquire this type of opinion, the costs to the court and defendants are not.

6  The undersigned will not undertake such a review with its attendant prejudice to other litigants

7  (delaying their adjudications) before this court solely for the purpose of satiating plaintiff's

8  curiosity or worse.

9  III.  Conclusion

10          Plaintiff's original lawsuit sought a change to the CDC grooming regulations.

11  Such a change has now come through the implementation of final regulations by CDC and

12  plaintiff is permitted to wear his hair in any length.  Plaintiff has received what his original

13  lawsuit requested and there no longer exists any claim or controversy over which this court can

14  fashion a remedy.

15          Accordingly,  IT IS HEREBY RECOMMENDED that plaintiff's action be

16  dismissed as moot.

17          These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten

19  (10) days after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22  shall be served and filed within ten (10) days after service of the objections.  The parties are

23  advised that failure to file objections within the specified time may waive the right to appeal the

24  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

25  DATED: 8/11/06                                    /s/ Gregory G. Hollows

26  GGH/kr - daws0964.fr                          _____
                                                   UNITED STATES MAGISTRATE JUDGE